May it please the Court, Sarah Rose Weinman for Appellant, Mr. Ramon Andrade-Castillo. Castro-Verdugo held that there are two essential criteria for creating jurisdiction to revoke probation. One of those essential criteria, that a defendant be serving a valid term of probation, was absent here because unlike the defendant in Castro-Verdugo, Mr. Andrade's term of probation had expired prior to the revocation. So, I know you've been asked to address that, so are you saying that Castro-Verdugo is not dispositive if it stays in place? You're distinguishing it right now, or? Well, Castro-Verdugo states that the only criteria necessary to create jurisdiction over probation are that, one, the defendant still be serving a valid term of probation, and two, that the defendant violate one of the conditions of probation. Under Castro-Verdugo's rule in that regard, the first criteria is lacking in Mr. Andrade's case. Mr. Andrade was not serving a term of probation at the time of revocation proceedings because the probationary term had expired or terminated when the district court pronounced a sentence of time served at the 2011 sentencing. And because the term of probation expired or terminated in 2011, he was not serving that term of probation in 2013 at the revocation proceedings. Therefore, under 3565A, there is no jurisdiction to revoke. And again, that's under the rule set forth in Castro-Verdugo. The factual underpinning of Castro-Verdugo was distinct in that, in that case, there was no term of imprisonment imposed. Well, but see, I thought that Castro-Verdugo stood for the proposition that you can't attack the underlying sentence of probation, that you have to challenge it at the time that it's imposed, which he didn't do it at that time. And so I thought it stood for that proposition and so that you didn't, because you did challenge it when they were trying to revoke his probation, right? What Castro-Verdugo held was that where the probation, the term of probation is validly running at the time of revocation, no direct appeal from the revocation proceedings can challenge the imposition of the underlying probationary term. But that's not what happened in Mr. Andrade's case. In Castro-Verdugo, because the term of imprisonment imposed at the original sentencing was stayed, stayed by definition means that the term of imprisonment was not imposed or executed. And therefore, under 3561A3, the term of probation that the district judge in that case sought to impose at the same time was valid, was continuing to run, and established jurisdiction at the later revocation hearing for the district judge to revoke. So the whole thing in Castro-Verdugo was that because the term of probation was still running, the defendants in that case could not challenge the underlying imposition of probation. That's not what happened here. The critical distinction is that the ---- So you're saying because he wasn't, it wasn't still running that you can challenge the underlying, you can challenge the original sentence? We're not challenging the original sentence. We're challenging whether the district court had jurisdiction to revoke probation. Again, Castro-Verdugo says that ---- You're saying probation had expired? Correct. So your argument is there was no probation to revoke? Exactly. So how did it expire? It expired when the district court pronounced a sentence of time served in 2011. And again, that distinguishes the case from Castro-Verdugo on the facts. Under 3561A3, a defendant who's been found guilty of an offense may be sentenced to a term of probation unless the defendant is sentenced at the same time to a term of imprisonment. Now in this case, the district court pronounced a sentence of time served. In other words, pronounced a sentence of the term of imprisonment. When the district court then went on to impose a term of probation, that term of probation had to naturally expire. Well, I still think you don't get out from Castro-Verdugo. I think we're sort of talking it's because here the district court, it's my understanding that you're saying it exceeded its statutory authority under 18 U.S.C. 3561 by sentencing your client to a term of probation in conjunction with a sentence of six months' time served. And Andrade was serving a term. So you're saying that so the probation was done then. The probation expired or terminated. At the time he said time served. Correct. All right. But that's not, but the court didn't say it was expired. And so Castro-Verdugo said you had to challenge it then and say there's no probation because you sentenced him to time served. That's not what Castro-Verdugo said, actually. I mean, Castro-Verdugo never addressed the expiration or termination language of 3565A. It didn't have to because in that case, the sentence, the custodial term imposed at the underlying sentence was state. That is, it was never executed. It was a fictive, hypothetical future incarceratory period that never had any effect on the sentence. Well, shouldn't someone have said when the judge said time served, he can't be on probation? Nobody had to say that because the term of probation naturally expired in that moment. Is there a case law or is there a case or statute that says when the judge says time served, the probation expires? There's nothing that states that directly. There's no case law out there that I was able to find that defines. I mean, you're very articulate on this point, but we're looking for a case on that. Well, I completely understand. And I think the problem is that there's simply no opinion out there like Castro-Verdugo. But can you see why we think it's similar to Castro-Verdugo? Because the sentence was imposed unlawfully and illegally and not challenged by the attorney at that point. And then only later when there's this revocation proceeding. I mean, I personally don't see that. I don't agree with Castro-Verdugo. My colleagues know it because it seems to me that you can't revoke an illegally imposed sentence. But that seems to me to be all you're arguing, that you're not giving us anything more to say it magically, you know, how do we know it magically expired? I think that has to follow a natural reading of the probation statutes. And the distinction again here is that in Mr. Andrade's case. So do you think Castro-Verdugo was wrongly decided? I think that Castro-Verdugo is wrongly decided. I understand that it's — You know, you can just say yes. You have a little over two minutes left, and you're talking about a four-month issue. And you've got a lot of issues. You haven't gotten to the merits at all. And why didn't you just say yes? You think it was wrongly decided. I do think Castro-Verdugo is wrongly decided. I understand that it's my — Well, don't make the speech. You said it was wrongly decided. That answers the question. Now you've got about two minutes left for all your other issues. I would like to address next the — Well, I'd like you to address next the question of whether you're relying on a case that says the cost of prosecution may not be considered. Yes. And you're saying that includes the question of the cost to the government of having to keep looking for this fellow, having to keep prosecuting him, having to keep track of him, that all those costs the court considered, which seems to me the most reasonable of your other arguments. So I'd like to hear what support you have. And do you think that was a material part of his sentencing? I think the record makes clear that it was a material part of the sentencing. The district judge in imposing a sentence stated the court finds that the upper end of the guideline sentence is a reasonable point here. I find that that sentence promotes respect for the law, serves a determined purpose in this case, and protects the United States to this extent. There's a cost associated every time the defendant comes back in, and the public fisc is certainly one of the things that ought to be protected. The court directly tethers its imposition of a high-end sentence to this cost to the public fisc. And I think under this court's decision in Tapia Romero, that is clearly an impermissible sentencing factor. Tapia Romero stated that it's procedural error for a court to consider the dollar cost of incarceration in determining the length of a prison sentence, and its rationale was twofold. First, the plain language of 3553A nowhere includes the cost of incarceration as a consideration. And secondly, looking elsewhere in the criminal code, the court found that other provisions in the statute do explicitly include the cost of incarceration, showing that when Congress intended to include the cost of incarceration as a consideration, it did so very clearly. Now here we have the exact same situation. We know that under 3553A, nowhere is there included under the sentencing factors this cost to the public fisc as being a part of protecting the public. And we also know that there are at least 14 statutes that allow or require a district court to impose a cost of prosecution on a defendant. So under Tapia Romero's reasoning, we know that if Congress intended to include the cost of prosecution as a consideration of sentencing, it very clearly could have done so. So can I just ask, are you saying it's a procedural error, or as in calculation of the guidelines, or a substantively unreasonable error? It's a procedural error. All right. All right. Thank you, counsel. We'll give you a minute for rebuttal since you've used more than your time. Good morning. Good morning. May it please the Court. Janet Cabral for the United States. Can we just jump right to it here? Absolutely. Assuming the district court in fact sentenced Mr. Andre Castillo to both a sentence of time served and probation, would you concede that that is a sentence that has exceeded the court's authority? I do not, Your Honor. This case, I think that defense counsel is correct, appellant's counsel is correct in that this case is distinguishable from Castro-Verdugo, and it's distinguishable because the sentence of time served, the court's statement that he was crediting Mr. Andrade for time served is superfluous. He's entitled to time served as a matter of statute under 3585 in calculating any term of imprisonment. Well, that's not, you know, judges say that all the time. I'm not going to give you any additional time because I'm limiting the time you're going to have to serve to time served. It's still a sentence of incarceration. It's just he's already served it. Well, except the difference comes in. And if you look, too, there's two places where you can look in terms of how to treat that. Number one, the criminal history report. As you evaluate how that scores for criminal history purposes, it scores as a one. He was sentenced to probation. And when you look at both the judgment and the court's pronouncement of judgment, the court sentenced him to probation. I think that's a nice gloss, but we know that this particular judge has been consistently sentencing people to a term of imprisonment and probation, even though that is an illegal sentence. And there's no reason to think that isn't what he was doing here. And I understand your position with that. I don't. There's only two. We've researched this. They continually sentence in a manner that's not consistent with the law. I do believe that the district court in this case looked at the law, looked and found it distinguishable that the sentence of time served is Where is that in the transcript? In terms of, it's not in the transcript. Yeah, so don't tell me what you're speculating about what this particular judge is thinking, because I'm looking at what he did. And I appreciate that, Your Honor. I do think that the Well, it does say in the transcript, I think, that he'd like to put everyone on probation or something. It's, well, I think that maybe, I don't know if it's probation. Or supervised something. In 2013, he talks about supervised release, that he believes that's appropriate. That doesn't necessarily pertain to Well, okay, let's say it was error, though. Let's just assume that and move on to Ben. Ben, do you think that Castro-Verdugo applies here? I do think that Castro-Verdugo applies in what appellant's counsel omitted one important word when indicating the holding of Castro-Verdugo. She added the word valid. Nowhere in Castro-Verdugo does the word valid appear. What it says is, in short, the only criteria necessary to create jurisdiction is that, number one, the defendant be serving a term of probation. And number two, that he violates that term. To say that he has to be serving a valid term of probation in itself calls into question the validity of the sentence. Well, I think her argument was that if it's not valid at the time, it just, that goes away. And so there's no, it just, it doesn't, it doesn't exist. And so we kind of went back and forth on that. So if we get past that and your word on that, then let's just say, okay, if Castro-Verdugo does apply, if we get past your argument that he was on, that the judge could do what he did. If there's a petition for rehearing in that case, should we wait to decide this case until those proceedings have concluded? I do think that this case, that portion of this case, is controlled by Castro-Verdugo. Castro-Verdugo did rely on both Simmon and Jaraz, you know, which was fairly well-established law previously, that in reviewing the defendant can't raise a challenge to the validity of the underlying sentence at the time of revocation. So that's well-established law. I don't think that it would be unreasonable, however, to delay decision on this until the petition for rehearing in Castro-Verdugo has been resolved. What about Judge Reinhart's questioning in the area of the public fisc and how that relates to an analysis under 3553, or what would be your position on that? Thank you. I don't believe that the appellant has demonstrated that the court committed a significant procedural error here. First, I do note that it is reviewed under the plain error standard because it wasn't an issue that was raised at the time of sentencing. And even so, even so, I think that there is — there's a distinction between what this court prohibited in Reyes-Bonilla, which was looking at — in that case, the court looked at whether it — involved here because Mr. Andrade or Mr. Andrade-Castillo has been coming back and forth quite a bit. And there was discussion about 18 times. I mean, he's been convicted a lot of times. And I was actually surprised that he hasn't done more time on this, to be perfectly honest. But, I mean, apparently it started at misdemeanors. And so, you know, at some point it's going to get pretty bad for him if he keeps coming, I think, because I see the sentences going up. But that being said, there does seem to be some frustration if we keep — you know, you say you're not going to come, but you keep coming, and 18 times, and this, that, and it's costing everyone a lot of money. You just keep coming. How does that all shake out? And so both the reference to the number of times that he had returned to the United States and the reference to the cost of prosecution are a shorthand way of simply saying deterrence, that the public's interest in deterrence and in protection of the public in general justifies the sentence. It's not procedural error. Well, it may be a reference, but is it a material part of the sentence, of the reason for the sentence? It's material insofar as the district court has determined whether it was necessary to impose a sentence of 14 months to deter him from coming back. And so in talking about the number of times that he had previously reentered the United States illegally and in talking about the impact of continued prosecution, the court's talking about, when looking at the transcript, the district court was clearly talking about deterrence. You know, what sentence is going to deter this defendant from returning to the United States? Well, where is he sentence-wise right now? What's his outdate? So he is set to be released in December of this year. He was sentenced to a total of 18 months in custody when you take into account the 14 months on the 2013 case and the effective four months after he received that credit for time served on the revocation of probation. Have you seen any practice with the BOP releasing people who are subject to deportation early because they just deport them rather than keeping them in the crowded jails? I have not. I have seen none of that. I have no information about that. If we took your suggestion that we withhold decision in this case, it would certainly make irrelevant the procedural errors. Let's assume you're wrong. It might be difficult, but try to think as if you were wrong when the judge said, our public risk is so bad we can't tolerate all these expenditures you're causing us, so we're going to keep you in jail for an extra period of time. Let's assume that was wrong. It wouldn't matter, would it, if we just withheld decision because he's going to be out anyway, and it doesn't affect anything other than the length of a sentence. I don't think that it would be unreasonable of the court to delay pending resolution of the petition for re-hearing. I don't think that that should take much longer. That decision was three months ago. You're not familiar with our bankruptcy laws. You have no idea. But even if it did, this court could simply rely on the clear existing, pre-existing authority of Jaross and Simmons, which holds essentially the same thing, which is that the defendant here, Mr. Andrade Castillo, cannot, on appeal of the sentence following revocation of probation, attack the other licensee. Because that wasn't the question I asked you about. I asked you about whether you, if you were wrong, about the idea that the judge can rely on the cost, administrative cost, of tracking him down, prosecuting him, all of that, even though we know they can't rely on the cost of keeping him in prison. The, if you can't rely on those other costs, and we don't decide that until after he gets out, it's not going, it's going to be moved by that time. You know, I suppose to some extent the court could perhaps sever that issue, if he truly, if the court truly believes that the court's committed, under the plain error standard, committed significant or substantial error. Well, you make the complaint, but whatever standard the court truly, as you put it, concluded that you were wrong on this point. Yes. If we did conclude you were wrong on that point, and we held the decision, it would deprive him of the benefit that he's entitled to permanently. It would, Your Honor. Or any other procedural error. Or any other procedural error. No. That is an unfortunate procedural cost. If the court doesn't have any other issues, I'll submit on the brief. Thank you, counsel. Thank you, Your Honor. Just very briefly, counsel discussed the decisions in Geraci and Simmons, and I just want to point out that those decisions challenged via a revocation appeal the underlying conviction, not the underlying sentence. In neither case did the defendant in those cases challenge the underlying sentence. To the extent that Castro-Perdigo relied on them for that proposition, it misread those holdings. I also would just like to state that this court has held that a time-served sentence converts  That's Aragon-Moreno, and there's other ample case laws stating that a time-served sentence is a term of art. That imposes a term of incarceration. That's distinct from a state sentence in which this court has held that the definition of a sentence of imprisonment requires that a defendant must have actually served some of the time in custody for his sentence to qualify. So you said previously that there was no case that stood for the proposition that you're arguing. Does this case stand for that proposition, or do we have to extend from that? This case stands for the proposition that a term of imprisonment No, just answer my question. Does it stand for the proposition that you're arguing, or does it require that we extend? I believe this case supports my argument. I believe that the court's earlier question was whether there's anything defining a term of expiration. And there's no case law that I've found that defines the term, that defines the meaning of expiration. What we have is case law that says that time served creates a term of imprisonment. A state sentence does not create a term of imprisonment. And because of the distinction there, we know that in Castro-Perdugo, no term of imprisonment was used. Okay. I understand your argument then. Okay. Thank you. You've got eight seconds left in your minute. Just quickly, I believe that counsel misread the transcript as to the public fisc argument. The district court clearly stated that the sentence imposed was based on three sentencing factors, deterrence, just punishment, and protecting the public. It clearly tied this cost to the public fisc to the protection of the public factors. It tied the sentence to the cost to the public fisc. That, under Tapia-Romero, is procedural error, and under Tapia, it's plain error. It affected my client's substantial rights by exposing him to a longer sentence. Thank you, counsel. Thank you. The case to interrogate will be submitted. The court will take a brief morning recess.
judges: REINHARDT, WARDLAW, CALLAHAN